NOT FOR PUBLICATION
File Name: 06a0479n.06
Filed: July 10, 2006

No. 05-1647

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

WILLIAM JACOB,

      Plaintiff-Appellee,

v.

TOWNSHIP OF WEST BLOOMFIELD;
MICHAEL C. KILLIAN, in his
individual and official capacities;
LARRY RUSHING, in his individual
and official capacities,

      Defendants-Appellants.

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE:    SUHRHEINRICH, ROGERS, and COOK, Circuit Judges.

    **SUHRHEINRICH, J.,** Plaintiff-Appellee William Jacob brought suit under 42 U.S.C. § 1983 against Defendants-Appellants Township of West Bloomfield ("the Township"); Michael C. Killian, in his individual and official capacities; and Larry Rushing, in his individual and official capacities, for alleged violations of Jacob's constitutional rights. Killian appeals the judgment of the district court denying in part his motion for summary judgment on all claims. For the reasons that follow, we **REVERSE** in part and **VACATE** and **REMAND** in part for further proceedings.

### I. BACKGROUND

    In 1990, Jacob and his family moved into a house located on the corner of Willow Road and

Hoover Road in West Bloomfield, Michigan.[1] The property is partially enclosed by varying types of fencing. (J.A. 197.) There is a significant gap in the fence on either side of the driveway, exposing Jacob's yard to passersby. (J.A. 442-43.) The driveway entrance is on Willow Road, which Jacob describes as "a main highway." (Appellee's Br. 5.) Jacob erected several "No Trespassing" and similar signs around his property. (J.A. 261.)

Defendant Killian has been a code enforcement officer for the Township since October 1998. (J.A. 208.) In 1999, Killian received an unsolicited complaint regarding the condition of Jacob's property. (J.A. 221.) Killian investigated the situation and found potentially unlicensed and inoperable vehicles, a trailer, and "castoff material" in the yard. Grass was growing around these items, and the yard "needed some general cleanup." (J.A. 221-22.) In filling out paperwork on the matter, Killian discovered that there had been ten previous complaints relating to Jacob's property since 1990. (J.A. 222.) Killian sent Jacob a notice of violation. (J.A. 224.) After a follow up investigation, Killian determined that Jacob remained in noncompliance. (J.A. 92.)

A series of investigations and notices followed. (J.A. 92.) The Township eventually filed misdemeanor criminal charges. In October 1999, Jacob entered into a plea agreement with the Township attorney.[2] (J.A. 407-08.) The agreement called for Killian to plead guilty to the charges of blight. (J.A. 272.) In return, the court was to issue, but not sign, a commitment order to have Jacob serve thirty days in the county jail. Fourteen days after entering the guilty plea, the court was to sign the order unless Killian, after again inspecting the property, notified the court that Jacob had cured the blight conditions. (*Id.*)

---

[1]Jacob and his family have since moved to Kentucky.

[2]The Township hired an outside attorney to handle district court prosecutions.

As instructed, Killian reinspected the property after fourteen days. He notified the Township attorney of continued violations and recommended that the attorney petition the court to sign the commitment order. (J.A. 274-75.) The Township attorney heeded Killian's recommendation and requested that the court sign the order. (J.A. 277.)

The court gave Jacob two days to appear. (J.A. 408.) At that time, however, Jacob was in the hospital and was thus unable to appear before the court. (*Id.*) Jacob claims that both he and his wife contacted the court to notify it of his situation. (J.A. 248.) Nonetheless, the court issued the order after two days without an appearance. Jacob served thirty days in a county jail. (J.A. 408.)

Killian continued to investigate and cite Jacob for blight conditions after Jacob completed his sentence. (J.A. 93.) A lengthy dispute over the erection of a new fence followed. (J.A. 408-10.)

In September 2002, Defendant Rushing, another code enforcement officer with the Township, issued Jacob a ticket for allegedly leaving unused lawnmowers in his yard. (J.A. 410.) That charged was ultimately dismissed. (J.A. 411.)

Jacob brought suit under § 1983 against the Township, Killian, and Rushing (collectively, "Defendants") for violations of his constitutional rights. Jacob claimed multiple violations of procedural and substantive due process, equal protection, and the Fourth Amendment. (J.A. 11-15.) Jacob alleged, among other things, that on at least four occasions beginning in September 1999, Killian had entered Jacob's yard without permission or a search warrant. (J.A. 12, 412-13.) On at least one occasion, Killian is alleged to have taken photographs of the interior of Jacob's house through windows. (J.A. 412.) Killian has never denied these allegations.

Defendants moved for summary judgment on all claims, and alternatively, that Killian and Rushing were entitled to qualified immunity and that the Township was entitled to municipal

immunity. (J.A. 41-42.)

The district court granted Defendants' motion on all but two claims: a procedural due process claim relating to Jacob's incarceration, and a Fourth Amendment claim relating to allegations that Killian illegally searched Jacob's yard without a warrant.[3] (J.A. 37.) As to both remaining claims, the district court denied the Township municipal immunity and denied Killian qualified immunity. Killian appeals the denial of qualified immunity. (J.A. 38.)

## II. ANALYSIS

The sole issue on appeal is whether the district court erred in denying Killian qualified immunity.[4] Denial of summary judgment on the issue of qualified immunity is an interlocutory decision that is immediately appealable as a final order. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Summers v. Leis*, 368 F.3d 881, 886-87 (6th Cir. 2004).

Denial of summary judgment is reviewed de novo. *Summers*, 368 F.3d at 885. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). This Court must view all facts and inferences drawn therefrom in the light most favorable to the non-moving party, but uphold the grant of summary judgment "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec.*

---

[3]Rushing is not alleged to have been involved in either remaining claim; thus, he has been effectively dismissed from this case.

[4]Jacob devotes a substantial portion of his response brief arguing that the district court erred in granting Defendants summary judgment on his other claims. However, Jacob did not file a cross appeal, and thus, these issues are not properly before this Court. *See Ford Motor Credit Co. v. Aetna Cas. & Sur. Co.*, 717 F.2d 959, 962 (6th Cir. 1983).

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

We note at the outset that Jacob's primary argument–that this Court does not have jurisdiction to hear the appeal because Killian raises only issues of fact–is without merit. To the extent that genuine issues of fact exist, this Court may nonetheless resolve the legal issues based on the facts as construed in a light most favorable to Jacob. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005). Because Killian seeks a determination as to whether the facts as construed by the district court constitute a violation of clearly established constitutional law, we proceed to the merits. *See generally Johnson v. Jones*, 515 U.S. 304, 311 (1995) (stating that a denial of qualified immunity is immediately appealable if "the issue appealed concern[s], not which facts the parties might be able to prove, but, rather, whether or not certain facts showed a violation of 'clearly established' law").

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," *Mitchell*, 472 U.S. at 526, and "'is an *immunity from suit* rather than a mere defense to liability,'" *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) (quoting *Mitchell*, 472 U.S. at 526). The Supreme Court has created a two-step process for analyzing claims of qualified immunity. First, the court must determine whether a constitutional violation has occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If so, the court then determines whether the constitutional right that was violated was "clearly established" at the time of the violation. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. This Court looks "first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits" to determine whether the law was

-5-

clear at the time. *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991). If this Court determines that the constitutional right was clearly established, the defendant is not entitled to qualified immunity. Once raised, the plaintiff bears the burden of proving that the defendant is not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006).

## A. Fourth Amendment Claims

Killian first argues that the district court erred in denying him qualified immunity on Jacob's Fourth Amendment claim. In the complaint, Jacob alleged that Killian had violated his Fourth Amendment rights by conducting warrantless searches in his yard. The district court examined a survey diagram of Jacob's property showing that the "backyard is located immediately behind [the] home and that the majority of the backyard is enclosed by wire and wood fencing." (J.A. 23.) The court concluded, therefore, that the backyard was part of the protected curtilage of Jacob's house. (*Id.*) The court ultimately denied Killian qualified immunity, because at the time of the alleged searches, "it was clearly established that Fourth Amendment rights extend to the backyard and 'curtilage' area of the home." (J.A. 35.)

During the course of discovery, Jacob disclosed that he intended to pursue his Fourth Amendment claim based on four separate incidents. The first was in September 1999 when Killian is alleged to have entered Jacob's property without a warrant to post a "stop work" order on a fence Jacob had been constructing. (J.A. 412.)

This first incident is not actionable, however, because it led directly to Jacob's guilty plea to misdemeanor blight charges. (J.A. 270-72.) Civil actions under § 1983 are inappropriate if their success would necessarily undermine the validity of outstanding criminal judgments:

> [W]hen a [plaintiff] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity

of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (footnote omitted). Counsel for Jacob all but conceded at oral argument that the September 1999 conduct cannot form the basis of a § 1983 claim, because Jacob's success would undermine his conviction and sentence. Thus, under *Heck*, the September 1999 search, upon which Jacob's subsequent conviction was based, could not form the basis of a § 1983 claim, so long as Jacob's conviction and sentence remain undisturbed. *See Shamaeizadeh v. Cunigan*, 182 F.3d 391, 398-99 (6th Cir. 1999) (holding that, where an allegedly illegal search produced evidence used to obtain a conviction, the convicted cannot bring a § 1983 claim challenging the search until the conviction is overturned); *Harvey v. Waldron*, 210 F.3d 1008, 1015 (9th Cir. 2000) ("We believe that the Second and Sixth Circuits have taken the better approach and therefore hold that a § 1983 action alleging illegal search and seizure of evidence upon which criminal charges are based does not accrue until the criminal charges have been dismissed or the conviction has been overturned."). The district court erred to the extent it denied Killian qualified immunity from allegations relating to this conduct.

The remaining alleged incidents–all alleged to have occurred after Jacob's incarceration–do not run afoul of *Heck*. Thus, we must analyze Killian's claim of qualified immunity as to those remaining incidents.

It is well established that the protections of the Fourth Amendment extend to the curtilage of the home. *United States v. Jenkins*, 124 F.3d 768, 772 (6th Cir. 1997); *see also Dow Chem. Co. v. United States*, 476 U.S. 227, 235 (1986). Conversely, there is no Fourth Amendment violation

for warrantless searches of open fields. *See Oliver v. United States*, 466 U.S. 170, 177 (1984). "The concept of curtilage, unfortunately, evades precise definition." *Jenkins*, 124 F.3d at 772. To aid courts in analyzing these cases, the Supreme Court in *United States v. Dunn*, 480 U.S. 294 (1987), articulated four factors to consider:

> the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*Id.* at 301. The Court emphasized that these factors are useful only to the extent that they bear upon "the centrally relevant consideration–whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.*

After the parties filed their briefs but before oral argument, this Court decided *Widgren v. Maple Grove Township*, 429 F.3d 575 (6th Cir. 2005). In that case, we addressed a citizen's reasonable expectation of privacy when a municipal tax assessor enters the curtilage of the home. We held under the facts of that case that "a property assessor does not conduct a Fourth Amendment search by entering the curtilage for the tax purpose of naked-eye observations of the house's plainly visible exterior attributes and dimension–all without touching, entering, or looking into the house." *Id.* at 585-86.

Here, Killian, a code enforcement officer, entered the curtilage of Jacob's property to investigate potential ordinance violations previously visible from outside the curtilage. At oral argument, counsel for Jacob suggested that remand may be proper in light of *Widgren*. We agree. Remand will give both parties an opportunity to brief the matter fully, and will allow the district court to make relevant findings. Therefore, we vacate the judgment of the district court and remand for further proceedings to determine the effect, if any, *Widgren* has on Killian's claim of qualified

immunity on claims based on incidents alleged to have occurred after Jacob's October 1999 incarceration.

### B. Procedural Due Process Claim

Killian also argues that the district court erred in denying him qualified immunity from Jacob's procedural due process claim. The district court determined that Killian and the Township attorney sought an arrest warrant and later arrested and incarcerated Jacob without first providing him with notice or an opportunity to be heard. (J.A. 29.) The district court concluded that, because it is well established that due process requires notice and an opportunity to be heard before an individual may be deprived of a liberty interest, Killian was not entitled to qualified immunity. (J.A. 35.)

Although the district court noted "this issue [was] not clearly articulated in [Jacob's] brief" (J.A. 29), nor listed in his complaint,[5] Jacob incorporated by reference into Count I the allegations of failed notice and an opportunity to be heard prior to his arrest. (J.A. 11.) Thus, Defendants had "fair notice" of the claim under this Court's liberal pleading standards. *See Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993).

Turning to the merits, we conclude nonetheless that the district court erred in denying Killian qualified immunity.

First, Jacob was given notice and an opportunity to be heard. The arrest and incarceration were part of the Township's ongoing criminal case against Jacob for blight. In that case, the two sides entered into a plea agreement. As part of the agreement, Jacob pleaded guilty to the alleged

---

[5]In fact, Count I of the complaint , which alleges violations of Jacob's procedural due process rights, does not list the lack of notice prior to incarceration among the three alleged violations. (J.A. 11-12.)

ordinance violations.  He also agreed to the immediate issuance of a thirty-day commitment order that the judge was to sign fourteen days later.  In exchange, the Township attorney agreed to have the order set aside should Killian determine that Jacob had come into full compliance within fourteen days.  In other words, the only way Jacob would not have been jailed would have been a finding by Killian that Jacob had cured his property of the blight.  Both Jacob and the Township attorney signed the agreement.

It is clear, then, that in requesting that the prosecutor seek a commitment order, Killian was merely performing his duties under Jacob's signed plea agreement.  Furthermore, Killian's request that the Township attorney seek a court order was surplusage.  As the plea agreement clearly states, the commitment order would have gone into effect even if Killian had simply stated that the blight conditions had not been cured.  Thus, Killian's request had no effect on the decision to jail Jacob.  Therefore, no constitutional violation occurred, as the deprivation of liberty occurred pursuant to a voluntary plea agreement.

Second, Jacob admits not only that the state court gave him two days to appear in order to explain himself (J.A. 408), but also that he had notice of this opportunity.  In his deposition, Jacob testified that he was in the hospital at the close of the fourteen days immediately following the entry of his plea agreement and tried to notify the court of this fact.  "I got the attending physician and assistant to call the Township and . . . Judge Sefelli's [sic] clerk - to notify them that I would not be attending court the following day. . . . My wife called the court. . . .  I was not in court on that date and, subsequently, I was incarcerated."  (J.A. 248.)  It seems, then, that Jacob knew at that time that he had a hearing and that consequences for failing to appear would result.  Therefore, no procedural due process violation occurred.

-10-

Finally, Killian was not personally involved in the alleged actions. To succeed in under § 1983, a plaintiff must show personal involvement by the defendant in the constitutional violation. *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam). Jacob has shown only that Killian requested that the Township attorney seek a court order for Jacob's arrest based on Jacob's failure to comply with the terms of a plea agreement. The attorney, in turn, requested that the court sign the commitment order. Five days later, the court issued a bench warrant for Jacob's arrest and commitment. (J.A. 279.) The order of the state court, then, was the ultimate cause of Jacob's incarceration. This was two steps removed from Killian's involvement.

Aside from that, Jacob has not shown that Killian sought to have Jacob incarcerated without adequate notice and opportunity to be heard. Killian merely requested that the Township attorney seek an order. Killian had no direct authority to seek or issue a commitment order. Killian has presented evidence that only the Township attorney had the authority to prosecute. (J.A. 456.) Jacob has not brought forth evidence to the contrary. Moreover, only the state court had the authority to issue the commitment order and to determine under what procedural conditions to do so. Killian, then, could not have affected the process Jacob received prior to being jailed. Thus, to the extent a constitutional violation occurred, the state court or prosecutor was at fault.

In any event, *Heck* again precludes Jacob's § 1983 claim. If Jacob were to succeed on the merits (i.e., prove that he was incarcerated without due process), the judgment would necessarily imply the invalidity of his sentence. *See Shamaeizadeh*, 182 F.3d at 396 n.2 ("Proof of illegality of the conviction is a necessary element of a § 1983 cause of action . . . when . . . the § 1983 plaintiff seeks damages for an allegedly unconstitutional conviction or imprisonment."). Therefore, a court may not consider this claim unless and until the sentence or conviction is overturned. *See Heck*, 512

U.S. at 486-87.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the judgment of the district court and **GRANT** Killian qualified immunity on Killian's Fourth Amendment claim based on conduct occurring before or contemporaneously with Jacob's October 1999 conviction and sentence. We **VACATE** the judgment of the district court as to the remaining conduct alleged to have violated Jacob's Fourth Amendment rights and **REMAND** for further proceedings consistent with *Widgren v. Maple Grove Township*, 429 F.3d 575 (6th Cir. 2005), and this opinion. Finally, we **REVERSE** the judgment of the district court and **GRANT** Killian qualified immunity on Killian's procedural due process claim.