*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0243p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

WILLIAM JACOB,

> *Plaintiff-Appellee,*

*v.*

No. 07-1534

TOWNSHIP OF WEST BLOOMFIELD, MICHAEL
KILLIAN, LARRY RUSHING,

> *Defendants-Appellants.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-70014—John Corbett O'Meara, District Judge.

Argued: June 4, 2008

Decided and Filed: July 3, 2008

Before: MERRITT, CLAY, and GILMAN, Circuit Judges.

---

### COUNSEL

**ARGUED:** Joseph Nimako, CUMMINGS, McCLOREY, DAVIS & ACHO, Livonia, Michigan, for Appellants. Elizabeth A. Downey, STEINBERG, SHAPIRO & CLARK, Southfield, Michigan, for Appellee. **ON BRIEF:** Joseph Nimako, CUMMINGS, McCLOREY, DAVIS & ACHO, Livonia, Michigan, for Appellants. Elizabeth A. Downey, STEINBERG, SHAPIRO & CLARK, Southfield, Michigan, for Appellee.

---

### OPINION

---

CLAY, Circuit Judge. Defendant Michael Killian, a land ordinance enforcement officer employed by the Township of West Bloomfield ("Township"), appeals the decision of the district court denying him summary judgment with respect to Plaintiff William Jacob's claim brought under 42 U.S.C. § 1983.[1] According to Plaintiff, Defendant violated his Fourth Amendment rights when Defendant entered Plaintiff's property without a warrant to inspect the property for criminal

---

[1] Plaintiff brought various claims against Defendant, the Township and against Larry Rushing, another land use inspector. Both Killian and Rushing were sued in both their individual and official capacities. *Jacob v. Township of West Bloomfield*, 192 F. App'x 330, 332 (6th Cir. 2006). Only Plaintiff's Fourth Amendment claims brought against Defendant Michael Killian in his individual capacity are at issue in this appeal.

1

violations of a land use ordinance. Defendant claims that he is entitled to qualified immunity against Plaintiff's claim, but the district court denied this assertion of immunity. Because it is clearly established that a criminal investigation must be conducted within the requirements of the Fourth Amendment, we **AFFIRM** the decision of the district court.

## STATEMENT OF FACTS

Upon receiving a complaint regarding the condition of Plaintiff William Jacob's property, Defendant Michael Killian investigated the property and discovered inoperable vehicles and "castoff material" in the yard surrounding Plaintiff's home. *Jacob v. Township of West Bloomfield*, 192 F. App'x 330, 331 (6th Cir. 2006). Many of these items had been sitting on the property so long that grass was growing around them. *Id.* Accordingly, Defendant notified Plaintiff that he was in violation of a local land use ordinance. *Id.*

After a series of investigations and notices which did not, in Defendant's opinion, bring about Plaintiff's compliance with this ordinance, the Township eventually filed misdemeanor criminal charges against Plaintiff. *Id.* at 332. In October of 1999, Plaintiff pled guilty to these charges. In return for his guilty plea, the Township agreed to an arrangement whereby Plaintiff would be given fourteen days to clean up his property. *Id.* If Plaintiff failed to achieve compliance with the land use ordinance within this fourteen day period, Plaintiff would be sentenced to thirty days in the county jail. *Id.*

On October 15, 1999, and again three days later, Defendant entered the curtilage of Plaintiff's property without a warrant, and determined that Plaintiff remained in non-compliance with the land use ordinance. As a result, Plaintiff eventually served thirty days in a county jail. *Jacob*, 192 F. App'x at 332. On November 15, 1999, while Plaintiff was still in jail, Defendant again entered the curtilage of Plaintiff's property without a warrant, and again determined that Plaintiff was not in compliance with the land use ordinance. After Plaintiff was released, Defendant continued to enter Plaintiff's property and cite him for violations of the land use ordinance. *Jacob*, 192 F. App'x at 332.

Plaintiff filed this suit under § 1983 alleging, among other things, that Defendant violated the Fourth Amendment when he entered the property to inspect it without a warrant. *Id.* Defendant sought summary judgment, claiming he is entitled to qualified immunity. The district court, while dismissing several unrelated claims, held that Defendant is not entitled to qualified immunity with respect to Plaintiff's Fourth Amendment claims.

On the prior appeal of this case, we held that any Fourth Amendment claims arising out of searches occurring prior to Plaintiff's guilty plea and incarceration were precluded by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), on the grounds that a civil suit holding that these searches were improper would undermine the basis of Petitioner's guilty plea and sentence. *Jacob*, 192 F. App'x at 334. This decision constitutes the law-of-the-case, and is not before us again on appeal.

With respect to the warrantless searches occurring subsequent to Petitioner's guilty plea and incarceration, however, we determined that *Heck* does not prevent Plaintiff from seeking civil relief. *Id.* at 335. Moreover, we also determined that, in the course of these warrantless searches, Defendant entered the area immediately surrounding Plaintiff's home which is entitled to the most robust Fourth Amendment protection. *Id.* Nevertheless, we remanded Plaintiff's remaining Fourth Amendment claims back to the district court to determine whether Defendant's intrusion upon the property constituted a Fourth Amendment search under *Widgren v. Maple Grove Township*, 429 F.3d 575 (6th Cir. 2005). On remand, the district court determined that *Widgren* is inapposite, and again denied qualified immunity to Defendant. The sole issue now before this Court on appeal is whether the district court properly held that *Widgren* does not preclude Plaintiff's claim.

## DISCUSSION

### *Standard of Review*

A district court's denial of summary judgment is reviewed *de novo*. *Farhat v. Jopke*, 370 F.3d 580, 587 (6th Cir. 2004). Such a denial should be affirmed unless "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact" as to an essential element of the non-moving party's case. Fed.R.Civ.P. 56(c). An issue of fact is "genuine" if a reasonable person could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). After the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When no genuine issues of material fact exist, this Court reviews *de novo* the district court's conclusions of substantive law. *Farhat*, 370 F.3d at 588.

### *Analysis*

Our limited task in this appeal is to determine whether the district court correctly resolved the issue presented to it by the Sixth Circuit's previous remand order: "the effect, if any, *Widgren* has on Killian's claim of qualified immunity on claims based on incidents alleged to have occurred after Jacob's October 1999 incarceration." *Jacob*, 192 F. App'x at 335. For the reasons which follow, we hold that the district court correctly determined that *Widgren* does not offer Defendant a valid claim of qualified immunity.

Resolving a claim of qualified immunity requires a two step inquiry, each step of which must be conducted in the proper order. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). First, a court must determine whether, if the facts alleged by the plaintiff are taken as true, a constitutional right was violated. *Id.* Only after this first step has been resolved in favor of the plaintiff may a court consider the second step of the qualified immunity analysis: "whether the right was clearly established" at the time of the violation. *Id.*

Turning to the first prong of this analysis, the Fourth Amendment provides a potent shield against warrantless searches and seizures within the curtilage of a person's home. *See Knott v. Sullivan*, 418 F.3d 561, 573 (6th Cir. 2005) (citing *United States v. Dunn*, 480 U.S. 294, 300 (1987)). "When determining whether an area is subject to Fourth Amendment protection by virtue of being part of a home's curtilage, the ultimate question we must resolve is whether the area harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." *Id.* (internal quotation marks omitted). Our remand order already determined that Defendant intruded upon the "intimate" areas surrounding Plaintiff's home, however, and this determination is both law-of-the-case and not before the Court again in this appeal. *Jacob*, 192 F. App'x at 335. Rather, the issue in the instant appeal deals with the character of the intrusion upon Plaintiff's property.

The Fourth Amendment's shield extends over government actions which intrude upon a person's "reasonable . . . expectation of privacy." *Dunn*, 480 U.S. at 316. Because a criminal investigation is viewed as among the most intrusive actions a government may take against an individual, the Fourth Amendment accordingly offers a particularly strong shield against such investigations. *See Widgren*, 429 F.3d at 583–84. Although the Fourth Amendment also provides some protection against administrative or regulatory searches, such investigations are generally less intrusive than one which could potentially lead to criminal sanctions, and are accordingly more likely to be tolerated under the Fourth Amendment. *See id.*

*Widgren* considered this distinction between criminal and merely administrative investigations. In *Widgren*, officials of Maple Grove Township discovered that Kenneth Widgren began construction of a house on his property, despite failing to obtain a building permit for the

construction of the home. *Id.* at 578. Accordingly, a local tax assessor entered the curtilage of Widgren's home without a warrant, and for the sole purpose of observing the exterior of the house to assess Widgren's property tax liability. *Id.* At no point did Widgren face the threat of criminal sanctions as a direct result of this assessment. The issue in *Widgren* was whether such a purely administrative, warrantless search ran afoul of the Fourth Amendment. Although the Court felt that *Widgren* presented a "difficult question," *id.* at 581, we ultimately held that "under the facts of this case," a tax assessor does not violate the Fourth Amendment by observing the exterior of a house for a purely "tax purpose." *Id.* at 585.

The instant case is distinguishable from *Widgren*, however, in that Defendant did not enter Plaintiff's property for a purely administrative purpose. *See id.* ("We also find it highly significant that the purpose of government intrusion here was an administrative, not criminal, inspection."). Rather, Defendant's warrantless search of Plaintiff's property carried with it the very real threat of criminal sanctions—a threat made real by the fact that Plaintiff had already been incarcerated for thirty days as a result of Defendant's intrusions upon his privacy. *Jacob*, 192 F. App'x at 332. Moreover, as Defendant admits in deposition testimony, he conducted several warrantless searches of Plaintiff's property after he was "asked to do so" by the very same prosecutor who undertook the proceedings that resulted in Plaintiff's incarceration in the first place. (J.A. 211) Defendant was a government official, acting at the directive of a criminal prosecutor, and investigating a matter which had already led to Plaintiff's incarceration; he was not conducting a merely administrative search.

Nevertheless, Defendant argues that his warrantless, criminal investigation did not invade Plaintiff's privacy because it was not as invasive as some searches of criminal suspects. In so arguing, Defendant relies upon the following language from *Widgren*, which describes some of the factors that often distinguish criminal and administrative investigations:

> [Administrative] matters may be looked into in a much shorter period of time than it often takes to search for evidence of crime, and certainly no rummaging through the private papers and effects of the householder is required. Nothing is seized. A police search for evidence brings with it "damage to reputation resulting from an overt manifestation of official suspicion of crime." A routine inspection that is part of a periodic or area inspection plan does not single out any one person as the object of official suspicion. The search in a criminal investigation is made by armed officers, whose presence may lead to violence, and is perceived by the public as more offensive than that of the inspector. Police searches are conducted at all times of the day and night, while routine inspections are conducted during regular business hours. By their very nature and purpose, police searches usually must be conducted by surprise. In contrast, some inspection programs involve advance notice that the inspector will call on a certain date, and an inspector on his rounds will sometimes agree to return at a more convenient time if the householder so requests. This permits the owner or occupant to remove or conceal anything that might be embarrassing to him.

429 F.3d at 584. Essentially, Defendant argues that because Plaintiff's home was searched by an unarmed officer, who did not rifle through his private papers or otherwise conduct an involved investigation, and because the warrantless searches of Plaintiff's property were not conducted at night, these searches are not governed by the Fourth Amendment.

Defendant's argument fails for two reasons. The first is that several of the distinguishing factors described in *Widgren* point in favor of a holding that Defendant violated the Fourth Amendment. Defendant specifically targeted his investigation at Plaintiff after receiving a complaint about the conditions of Plaintiff's property, and he continued to single-out Plaintiff for

continuing intrusions as Plaintiff failed to comply with the land use ordinance. Defendant did not search Plaintiff as part of a "routine inspection that is part of a periodic or area inspection plan." *Id.* Similarly, Plaintiff testified that he would frequently discover Defendant searching his property without any advance warning whatsoever; in other words, Defendant's investigations were "conducted by surprise." *Id.* Additionally, Plaintiff testified that he has suffered a loss of reputation as a result of the criminal investigation of his land use, causing him to become "somewhat of a joke in the neighborhood," and leading Plaintiff to step down as a member of his neighborhood association's board. (J.A. 176)

Moreover, even though some of the factors *Widgren* described as common to administrative searches are also present in the instant case, the Fourth Amendment does not excuse an invasion of privacy merely because the official conducting the search could have intruded even further upon an individual's privacy. In *Knott v. Sullivan*, for example, police briefly inspected a pile of ashes located near Diane Knott's home for evidence linking Knott's son to a murder. 418 F.3d at 566. We held that insofar as the ash pile was located within the curtilage of Knott's home, police violated the Fourth Amendment by entering the protected area surrounding Knott's home to inspect the ash pile without a warrant. *Id.* at 573. The facts that this invasion of privacy was brief, and that it occurred in the middle of the day, did not excuse the police's behavior. *Id.* at 565. Accordingly, the mere fact that Plaintiff did not endure an even more intrusive search does not obviate the Fourth Amendment's requirement that, "absent exigent circumstances," government officials may not conduct a criminal investigation within the curtilage of a person's home without a warrant. *See Dunn*, 480 U.S. at 310–11.

Having determined that Defendant's criminal investigation of Plaintiff's property violated the Fourth Amendment's warrant requirement, the only remaining question is whether or not this rule was "clearly established" at the time of the violation. *Saucier*, 533 U.S. at 200. This second prong of the qualified immunity test clearly weighs in Plaintiff's favor. In a 1987 decision, the Supreme Court held that "[n]o one would contend that, absent exigent circumstances, the police could intrude upon a home without a warrant" to search for evidence of criminal activity. *Dunn*, 480 U.S. at 310. In 1997, this Court held that "the curtilage is considered part of the house itself for Fourth Amendment purposes." *United States v. Jenkins*, 124 F.3d 768, 772 (6th Cir. 1997) (citing *Oliver v. United States*, 466 U.S. 170, 180 (1984)). Because the warrantless searches at issue in this case began in 1999, there is no question that the Fourth Amendment's protection of the intimate area surrounding Plaintiff's home was clearly established at the time of Defendant's entry upon the property.

Indeed, the Supreme Court's longstanding precedents show that it was clearly established at the time of Defendant's intrusion onto Plaintiff's land that such a criminal investigation is constrained by the Fourth Amendment's warrant requirement. As the Court held in *O'Connor v. Ortega*, 480 U.S. 709 (1987), the requirement that government officials must obtain a search warrant before making an unwelcome intrusion on private property is the norm, limited only by certain narrow exceptions. *See id.* at 720 ("[I]t is settled ... that 'except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant.'" (quoting *Mancusi v. DeForte*, 392 U.S. 364, 370 (1968))). Where exceptions do exist to this general rule, they exist "[o]nly in those exceptional circumstances in which special needs, *beyond the normal need for law enforcement*, make the warrant and probable-cause requirement impracticable." *Id.* (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (Blackmun, J., concurring in the judgment)) (emphasis added).

The search which took place in *Widgren* was "beyond the normal need for law enforcement" because it was not a law enforcement search at all; the sole purpose of that search was to make a tax assessment. *See Widgren*, 429 F.3d at 585. In the instant case, however, Defendant entered Plaintiff's property at the direction of a criminal prosecutor to search for evidence of a crime for

which Plaintiff had already faced criminal sanctions. Moreover, while Defendant's entry onto Plaintiff's land was certainly for a law enforcement purpose, Defendant claims no exigent circumstances "beyond the normal need for law enforcement" justifying Defendant's warrantless intrusion upon Plaintiff's property. Indeed, the only difference between Defendant's inspections and most routine criminal inspections is the fact that Defendant's inspections were not conducted by a law enforcement officer. Ultimately, however, this distinction matters little, as it is clearly established that a government official does not have to carry a badge and gun to be subject to the restrictions of the Fourth Amendment. *See United States v. Rohrig*, 98 F.3d 1506, 1512 (6th Cir. 1996) ("[T]here is no diminution in a person's reasonable expectation of privacy nor in the protection of the Fourth Amendment simply because the official conducting the search wears the uniform of a firefighter rather than a policeman . . . ." (quoting *Michigan v. Tyler*, 436 U.S. 499, 506 (1978))).

Having determined that Defendant's intrusion upon Plaintiff's property violated Plaintiff's clearly established rights under the Fourth Amendment, we agree with the district court that *Widgren* provides Defendant with no valid claim of qualified immunity.

## CONCLUSION

The district court correctly determined that Defendant was conducting a criminal—not a purely administrative—investigation during his warrantless intrusions onto Plaintiff's property. Accordingly, Defendant is not entitled to qualified immunity in light of *Widgren*, and the decision of the district court denying summary judgment to Defendant is **AFFIRMED**.