**File Name: 09a0105n.06**

**Filed: February 9, 2009**

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 08-1238**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MECHANICAL CONTRACTORS' ASSOCIATION INDUSTRY PROMOTION FUND, | ) ) ) ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| v. | ) ) | EASTERN DISTRICT OF MICHIGAN |
| GEM INDUSTRIAL, INC., | ) ) | |
| Defendant-Appellant. | ) | |

**Before: COLE and GIBBONS, Circuit Judges; BELL, District Judge.[*]**

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant GEM Industrial, Inc. ("GEM") appeals the district court's grant of summary judgment to plaintiffs-appellees Mechanical Contractors' Association Industry Promotion Fund (the "Fund") on the Fund's breach of contract claim, finding that GEM was required to make contributions to the Fund under a collective bargaining agreement. Because the district court did not err, we affirm.

---

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

1

I.

The Fund is a union trust fund established pursuant to a trust agreement and local collective bargaining agreements to promote the plumbing and pipefitting industry by engaging in various activities, including training and government lobbying. The Fund is a third party beneficiary of the contracts at issue and is therefore allowed to recover for GEM's breach. *See Anderson v. AT&T Corp.*, 147 F.3d 467, 473 (6th Cir. 1998). GEM is a unionized construction employer that performs work in Michigan. GEM has been a signatory to two local collective bargaining agreements with the Pipefitters, Steamfitters, Refrigeration and Air Conditioning Service Local Union No. 636 ("Pipefitters 636") since the mid-1990s.

The parties dispute the nature of the relationship between Pipefitters 636 and the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (the "UA"). GEM claims in its brief that Pipefitters 636 is a "local bargaining unit and subdivision of the UA" that is bound by the terms of collective bargaining agreements signed by the UA. (Def. Br. at 8.) The Fund points to the district court's finding that GEM offered no evidence to support its assertion that Pipefitters 636 is the local representative of the UA but does not specifically deny the assertion. (Pl. Br. at 5.) Our own review of the record has not revealed significant support for GEM's position. However, because on summary judgment, we must draw all reasonable inferences in favor of the nonmoving party and considering that the Fund did not deny the claim, we assume, without deciding, that a relationship exists between Pipefitters 636 and the UA for the purposes of this opinion.

The two collective bargaining agreements to which GEM is a signatory are between: (1) Pipefitters 636 and the Metropolitan Detroit Plumbing and Mechanical Contractors Association, Inc.

("Metropolitan"), and (2) Pipefitters 636 and the Association of Service and Mechanical Contractors of Southeastern Michigan ("ASAM") (collectively, the "Local Collective Bargaining Agreements").[1] The Metropolitan agreement contains the following provision:

> **Industry Fund.** The Employers agree to contribute the current allocated sum for each hour worked by each Employee covered by this Agreement to the Plumbing and Mechanical Contractors of Detroit Industry Fund. Effective June 1, 2002, any non Association contractor who, at the time of executing this agreement, elects not to contribute to the Industry Fund shall notify the Union and Association in writing of his decision, and the reasons therefore, and in lieu of contributing to the Industry Fund shall contribute a like amount to the Pipefitters Local No. 636 Insurance Fund which shall be in addition to the regular insurance Fund contribution required by **Paragraph 52** of the agreement.[2]

The ASAM agreement's provision about the industry fund reads as follows: "Each signatory-Employer agrees to contribute Twenty-five Cents ($0.25) for each hour worked by each Employee covered by this Agreement to the Association's Industry Fund."

GEM and the UA are also signatories to a national site-specific collective bargaining agreement called the General Presidents' Project Maintenance Agreement ("GPPMA"). Detroit Edison has entered the GPPMA with respect to maintenance work performed at its power plant, and any contractor (including GEM) who performs work at Detroit Edison's facilities must abide by the terms of the GPPMA.

The GPPMA states that:

---

[1]GEM suggested at oral argument that it did not sign the Local Collective Bargaining Agreements. While it is true that the Local Collective Bargaining Agreements were initially between Pipefitters 636 and Metropolitan and ASAM, GEM "adopt[ed] this Collective Bargaining Agreement . . . and agree[d] to abide by all its terms" on November 22, 1996. Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. D. Therefore GEM is a signatory to the Local Collective Bargaining Agreements.

[2]The Fund is the legal successor to the industry funds referenced in the Metropolitan agreement.

This Agreement is for the joint use and benefit of the contracting parties, and the provisions herein defined and set forth shall be construed as binding upon and effective in determining the relations between the parties and/or subordinate sub-divisions thereof signing hereto: and to set forth herein the basic Agreement covering the rates of pay, hours of work, and conditions of employment to be observed by the parties hereto.

It is mutually understood that the following terms and conditions relating to the employment of workers covered by this Agreement have been decided upon by means of collective bargaining and that the following provisions will be binding upon the Contractor and the Unions during the terms of this agreement and any renewal thereafter. It is further agreed that the employees working under this agreement shall constitute a bargaining unit separate and distinct from all others. This agreement covers all terms and conditions of employment for work being performed hereunder.

Contractors signed to the President's Project Maintenance Agreement by Contract, which is a national agreement, are not required to become signatory to a local collective bargaining agreement.

The GPPMA also includes a section about a contractor's contribution to fringe benefit funds:

Fringe benefits as negotiated in local and/or National working agreements shall be paid in addition to wage rates as specified in Schedule "A." Only bona fide fringe benefits which accrue to the direct benefit of the individual craft employee are required. This includes health & welfare funds, annuity, vacation, apprenticeship, training funds, and pension funds. Construction industry promotional funds are not applicable under terms of this agreement.

GEM conceded in Senior Vice President Steve Johnson's deposition of July 26, 2007, that "one of the terms and conditions of the local agreement when working under the local agreement is to pay the industry promotion fund" and that it had contributed to the Fund until 2002. Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. C. GEM claims that it stopped making contributions in 2002 because Detroit Edison instructed it to stop paying. Detroit Edison stated in manager Marc Rich's deposition of July 26, 2007, that it would not involve itself in a contractual relationship between one of its contractors and a local union. GEM also admits that it is not aware of any waivers that may apply to the terms of the Local Collective Bargaining Agreements but claims that the GPPMA does

4

not require GEM to make contributions to the Fund and that the terms of a national agreement such as the GPPMA should supersede the terms of the Local Collective Bargaining Agreements if the agreements conflict.

This matter was before the district court on GEM's and the Fund's cross-motions for summary judgment. The district court granted the Fund's motion and denied GEM's motion for summary judgment. GEM timely appealed to this court.

## II.

We review the district court's grant of the Fund's motion for summary judgment as well as the district court's denial of GEM's motion for summary judgment *de novo*. *See Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 619 (6th Cir. 2006). Summary judgment is warranted if "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The district court must draw all reasonable inferences in favor of the nonmoving party." *Skowronek v. Am. S.S. Co.*, 505 F.3d 482, 484 (6th Cir. 2007) (citation omitted).

## A.

GEM's first argument is that the district court erred in denying its motion for summary judgment because the plain language of the GPPMA and industry practice indicate that the GPPMA's terms supersede the terms of the Local Collective Bargaining Agreements regarding contributions to the Fund. The interpretation of collective bargaining agreements is governed by federal substantive law. *Int'l Union v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir. 1983). Courts apply traditional rules of contract interpretation to such claims "as long as their application is consistent with federal labor policies." *Id.* (citation omitted). Rather than being a private contract between two parties, a collective bargaining agreement is "a generalized code to govern a myriad of

5

cases and parties . . . and cannot be interpreted without considering the scope of other related collective bargaining agreements as well as the practice, usage and custom pertaining to all such agreements." *Int'l Union, United Mine Workers of Am. v. Apogee Coal Co.*, 330 F.3d 740, 744 (6th Cir. 2003) (citation omitted). Therefore, a court may consider evidence of the parties' intent outside the collective bargaining agreement if the agreement is ambiguous. *Id.* Whether an agreement's language is ambiguous is a question of law that "may be resolved summarily." *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993) (citation omitted). This court will look to the language of the collective bargaining agreements for clear manifestations of the intent of the parties. *Yard-Man*, 716 F.2d at 1479. "The court should also interpret each provision in question as part of the integrated whole. If possible, each provision should be construed consistently with the entire document . . . ." *Id.* (citation omitted).

The language of the Local Collective Bargaining Agreements is entirely clear that a contractor such as GEM must contribute the agreed-upon sum to the Fund. GEM has admitted that it has been signatory to these agreements since the mid-1990s. GEM also conceded that under these agreements, there are terms and conditions requiring GEM to make fringe benefit contributions to the Fund. Therefore, GEM had an obligation under the Local Collective Bargaining Agreements to contribute to the Fund and was in breach of this provision when it stopped making payments in 2002. We do not need to consider extrinsic evidence of the parties' intent since the language of the Local Collective Bargaining Agreements is not ambiguous. *See Apogee Coal Co.*, 330 F.3d at 744.

Even if we choose to consider evidence extrinsic to the Local Collective Bargaining Agreements, such as the GPPMA, GEM is not able to show that the parties did not intend GEM to be required to make contributions to the Fund. GEM argues that the terms of the Local Collective

6

Bargaining Agreements and the GPPMA conflict; and that when a conflict arises between national and local collective bargaining agreements, the terms of the national agreement (here, the GPPMA) must prevail. The GPPMA provides: "Fringe benefits as negotiated in local and/or National working agreements shall be paid in addition to wage rates as specified in Schedule 'A.' Only bona fide fringe benefits which accrue to the direct benefit of the individual craft employee are required." There is no conflict between this provision and the provisions of the Local Collective Bargaining Agreements because the GPPMA only states that Fund contributions are not required, not that they are prohibited. GEM cannot use a separate, non-conflicting contract to attempt to evade its obligations under the first contract. As the district court noted, we cannot "sanction a practice whereby a party unilaterally can relieve itself of contractual obligations simply by entering into a separate contract with a separate party." *Mech. Contractors Ass'n Indus. Promotion Fund v. GEM Indus., Inc.*, No. 06-14289, slip op. at *11 (E.D. Mich. Jan. 25, 2008).

Moreover, GEM is unable to demonstrate that the parties intended for the GPPMA to supersede or override the Local Collective Bargaining Agreements. Although GEM claims that Pipefitters 636 is a local bargaining unit of the UA, the district court rejected this characterization as unsupported by the evidence.[3] Even presuming the existence of a relationship between Pipefitters 636 and the UA does not help GEM's argument because the GPPMA's language does not indicate that it was intended to be a superseding agreement between the parties. Indeed, the GPPMA specifically notes that parties *may* also choose to join other local or regional collective bargaining

---

[3]Indeed, GEM's own characterization in Vice President Steve Johnson's deposition suggests that Pipefitters 636 and the UA are separate parties: "I'm signatory with the national UA on the national agreements, and I'm signatory with [Pipefitters] 636 on the local agreements." Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. C.

7

agreements by stating that contractors such as GEM "*are not required* to become [a] signatory to a local collective bargaining agreement." (emphasis added). The GPPMA contains no language stating that it supersedes or overrides any other agreements to which the parties are signatories, making it easily distinguishable from the recent Seventh Circuit case cited by GEM, *Nat'l Labor Relations Bd. v. Int'l Bhd. of Elec. Workers*, 425 F.3d 1035, 1040 (7th Cir. 2005), where the agreement in question specifically stated that it superseded the terms of any other agreement. Therefore, even if the provisions of the GPPMA and the Local Collective Bargaining Agreements were considered to conflict, GEM has not demonstrated that the GPPMA was intended to supersede the Local Collective Bargaining Agreements and cannot avoid its obligations under the Local Collective Bargaining Agreements by reference to the GPPMA.

B.

GEM next argues that the district court erred in denying its motion for summary judgment because federal labor policy dictates that the terms of the GPPMA supersede the terms of the Local Collective Bargaining Agreements regarding contributions to the Fund. Considering federal labor policies will not provide any benefit to GEM because, as noted above, the provisions of the GPPMA and the Local Collective Bargaining Agreements do not conflict. The GPPMA permits, but does not require, contributions to the Fund; and the Local Collective Bargaining Agreements require contributions to the Fund. None of the case law cited by GEM indicates that it can relieve itself of its obligations under the Local Collective Bargaining Agreements by invoking separate, nonconflicting obligations under the GPPMA.[4] *Int'l Ass'n of Machinists & Aerospace Workers v.*

---

[4]Nor does this make the GPPMA a "nullity," as GEM suggested at oral arguments. GEM has chosen to accept various non-conflicting obligations by becoming a signatory to both the GPPMA and the Local Collective Bargaining Agreements and cannot now evade either set of obligations by

8

*Int'l Longshoremen's and Warehousemen's Union*, 781 F.2d 685, 690 (9th Cir. 1986), was cited by GEM for the proposition that "local jurisdictional contracts . . . are secondary to bona fide, industry wide-collective bargaining agreements, and when in conflict the jurisdictional contract must give way." In that case, however, contrary to GEM's assertion at oral argument, neither of the alleged breaching parties were signatory to the local agreement: "[N]either [the Pacific Maritime Association] nor [the International Longshoremen's and Warehousemen's Union] were parties to the 1973 jurisdictional agreement." *Id.* at 691. This case is easily distinguishable because GEM is a signatory to the Local Collective Bargaining Agreements at issue. Likewise, GEM cites *United Bhd. of Carpenters & Joiners of Am., Local Union No. 747 v. Stone & Webster Eng'g Corp.*, 808 F.2d 5, 7 (2d Cir. 1986), but this case also involved a situation in which the employer was not a signatory to the local agreement and is therefore equally distinguishable.

GEM also claims that the district court incorrectly analyzed and applied a recent case, *Joint Admin. Comm. of the Plumbing & Pipefitting Indus. v. Washington Group Int'l, Inc.*, 2008 U.S. Dist. LEXIS 1448 (E.D. Mich. Jan. 9, 2008), to the facts present here. In that case, the contractor Washington Group was a signatory to the GPPMA but not to a certain local collective bargaining agreement. *Id.* at *9. The district court found in that case that the Washington Group was not required to make contributions to an industry fund because such contributions were not required by the GPPMA. *Id.* GEM claims that the court did not emphasize the fact that the Washington Group was not a signatory to the local collective bargaining agreement. However, GEM misses the point that the fund in *Joint Admin. Comm.* was seeking to collect industry funds pursuant to the GPPMA, which expressly does not require industry fund contributions, rather than pursuant to Local

attempting to create a conflict between the contracts.

Collective Bargaining Agreements that specifically require contribution. *Id.* at *14-15. The district court did not err in its analysis of this recent precedent.

C.

GEM's next assertion is that the district court erred in denying its motion for summary judgment because the plain language of the Local Collective Bargaining Agreements does not require GEM to contribute to the Fund. GEM notes that the plain language of the Metropolitan agreement allows GEM to "elect not to contribute to the [Fund]" by "notify[ing] the Union and Association in writing of his decision, and the reasons therefore, and in lieu of contributing to the Industry Funds . . . contribut[ing] a like amount to the Pipefitters Local No. 636 Insurance Fund." However, GEM admitted that it had not made like-kind contributions for any Detroit Edison projects, nor did it notify the Union and Association in writing of its decision not to contribute to the Fund. Therefore, GEM cannot seek the benefit of this provision since it did not comply with the written notice provisions required to pay like-kind contributions instead of contributing to the Fund.

D.

GEM's final argument is that the district court erred in granting the Fund's motion for summary judgment because there is a disputed genuine issue of material fact regarding whether the parties to the GPPMA and the Local Collective Bargaining Agreements intended to require GEM to contribute to the Fund. (Def. Br. at 58.) "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). If the moving party meets that burden, then the burden shifts to the non-moving party to present evidence setting forth specific facts showing that

10

a genuine issue of material fact is in dispute. *Jacob v. Twp. of W. Bloomfield*, 531 F.3d 385, 389 (6th Cir. 2008).

GEM conceded in its motion for summary judgment that "there is no genuine issue as to any material fact" in this case, and its brief does not identify any specific factual issues that are in dispute. Def.'s Mot. for Summ. J. at 1. Rather, GEM is simply repeating its substantive argument that the language of the Local Collective Bargaining Agreements and the GPPMA, the parties' practices, and general industry practices indicate that GEM was not required to contribute to the Fund. There is no dispute over the factual contents of the agreements at issue but merely a dispute over the implications of that content. Therefore, GEM has failed to show that there is a genuine issue of material fact that is disputed, and the district court did not err in granting summary judgment to the Fund.

III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to the Fund.